## PENCE, Assignee, etc., *v.* COCHRAN and others.*

*(District Court, S. D. Ohio. March, 1881.)*

1. **JUDGMENT LIENS—LEX FORI—RULE OF DECISION IN FEDERAL COURTS.**

   The lien of judgments depends upon the laws of the state in which they are asserted; and the federal courts, in determining their nature and priority, will be governed by the construction put upon those laws by the highest courts of the state.

2. **SAME—OHIO—PRIORITY—LEVY WITHIN A YEAR.**

   Under the laws of Ohio regulating the liens of judgments, a judgment levied within a year from its rendition, upon a part of the lands of the judgment debtor, is not a lien upon the lands not levied upon, as against a subsequent judgment rendered more than a year after the first, and levied upon such lands within a year from its rendition.

3. **SAME—BANKRUPT LAW.**

   Under the bankrupt laws of the United States, the liens of judgments and their priority is to be determined as they existed at the time of the adjudication in bankruptcy.

4. **SAME—SAME—OHIO—PRIORITY—LEVY WITHIN A YEAR.**

   Where D. had recovered a judgment against the bankrupt, and at a subsequent term of the court M. recovered a judgment against him, neither of which was levied, and before the expiration of a year from the rendition of the judgment first rendered the judgment debtor was adjudicated a bankrupt, *held,* that both these judgments were liens upon the lands of the judgment debtor not levied upon by a judgment rendered more than one year before the rendition of the first judgment, and must be paid in the order of their rendition.

*Reported by Messrs. Florien Giauque and J. C. Harper, of the Cincinnati bar.

In Bankruptcy. Exceptions to the Register's Report.

*White, McKnight & White*, for assignee.

*D. W. C. London*, for Brown county.

*D. W. Thomas*, for Moore and Dunn.

SWING, D. J. From the report of the register it appears that on the twenty-fourth day of November, 1874, the commissioners of Brown county, Ohio, recovered, in the court of common pleas of Brown county, a judgment against Reece Jennings, the bankrupt, and 18 others, for $22,620.12. It further appears that, at the time of the rendition of said judgment, Reece Jennings was the owner of two separate tracts of land situate in said county of Brown; that afterwards, to-wit, on the twenty-third day of November, 1875, the commissioners caused execution to be issued upon said judgment, which was levied upon one tract of said land only; that on the thirteenth day of June, 1877, James H. Dunn recovered in the common pleas court of Brown county, Ohio, a judgment against the said Reece Jennings for the sum of $1,-185.05; that Reece Jennings, on the twenty-fourth day of August, 1877, in pursuance of a contract entered into on the seventeenth day of May, 1877, conveyed to Louisa Kaeble, in consideration of the sum of $2,257, the tract of land which was levied upon by virtue of the execution issued on the judgment in favor of said commissioners; that on the twentieth day of October, 1877, R. C. Moore recovered, in the court of common pleas of Brown county, Ohio, a judgment against the said Reece Jennings for the sum of $839.49. It further appears that the said Reece Jennings, on his own petition, was, on the fourteenth day of December, 1877, adjudicated a bankrupt. It further appears that no executions were issued upon the judgments in favor of James H. Dunn and R. C. Moore. It further appears that the execution issued upon the judgment in favor of the commissioners of Brown county was also levied upon the lands of 16 other defendants, but it does not appear that an appraisement of any of the lands was made, nor does it appear what was the value of the lands levied upon. By proceedings under orders of this court, the tract of land owned by the bankrupt, and not levied upon

under the judgment of Brown county, was sold by the assignee, and the proceeds, after the payment of costs, is insufficient to pay the judgments of Brown county, of James H. Dunn, and that of R. C. Moore; and it was claimed before the register, by counsel for Brown county, that the proceeds of the sale should be directed to be paid upon that judgment; and by counsel for Dunn and Moore, that they should be paid to them. The register decided that the proceeds should be applied—*First,* to the judgment of James H. Dunn; *second,* to that of R. C. Moore. And to this finding the county has excepted.

The determination of this question involves the construction of the statutes of Ohio, declaring and regulating the liens of judgments, section 5375 of which provides that "such lands and tenements within the county where the judgment is entered shall be bound for the satisfaction thereof from the first day of the term at which judgment is rendered; but judgments by confession, and judgments rendered at the same term at which the action is commenced, shall bind such lands only from the day on which judgments are rendered; and all other lands, as well as goods and chattels, of the debtor shall be bound from the time they are seized in execution." And section 5415 provides that "no judgment on which execution is not issued and levied before the expiration of one year next after its rendition shall operate as a lien on the estate of a debtor to the prejudice of any other *bona fide* creditor." These are the two sections of the statute which bear directly upon the question in this case, and which control its decision. The supreme court of the state has been several times called upon to construe and apply them; and if we can ascertain the construction which they have given to them, and can apply that construction to the facts of this case, we must be governed by it. *Bank of U. S.* v. *Longworth,* 1 McLean, 35.

The first case in which these sections were construed is that of *McCormack* v. *Alexander,* 2 Ohio, 66, in which it was held by the court that judgment creditors who had not sued out and levied executions within one year from the date of their judgments lost their lien and preference as against sub-

sequent judgment creditors who had sued out and levied executions within one year. In that case there was but a single piece of land levied upon by the several executions.

The second case is that of *Patton* v. *Sheriff of Pickaway Co.* 2 Ohio, 396, in which it was held that when a levy is set aside parties stand in the same situation as if no levy had ever been made; and where such levy had been made within the year upon a senior judgment and set aside, it lost its lien as against a junior judgment which had been levied within the year.

The next case is that of *Earnfit* v. *Winans*, 3 Ohio, 135, in which it was held that the statute which restrained a levy upon the property of the surety until that of the principal was exhausted did not operate to preserve the lien of a judgment upon which execution had not been levied within the year, and a junior judgment upon which execution had been levied within the year was held to be the prior lien.

The next case is that of *Shuee* v. *Ferguson*, 3 Ohio, 136. From the statement of facts in that case it appears that the Bank of the United States obtained a judgment against Furgeson and others on January 8, 1822, in the circuit court of the United States for the district of Ohio, and on August 20, 1823, caused an execution to be levied on a quarter section of land of the defendant Ferguson, by the sale of which, on an older judgment, a surplus was produced. The Lebanon Banking Company obtained a judgment against Ferguson and others in August, 1823, but did not cause execution to be levied upon the land upon which the first execution was levied. Hansburger and Selley, in May, 1823, obtained judgment by attachment against Ferguson as a debtor of the Lebanon Bank, and also obtained an assignment of the judgment in favor of that bank against Ferguson, and on December 23, 1826, caused execution to be levied on the land in question. Thomas Shuee obtained a judgment against the same defendants' on December 24, 1825, and caused an execution to be levied upon the land in question on the twenty-third of December, 1826. I. Emlin obtained a judgment against the same defendants on December 24, 1825, and caused an exe-

cution to be levied on the same land on December 23, 1826. It does not appear from the statement of facts, or from the opinion of the court, whether execution had been issued upon the judgment in favor of the Lebanon Banking Company, and levied within the year upon other lands of the defendants than the tract, the proceeds of which were in dispute. I thereupon sent to the clerk of Warren county to ascertain whether the records in the common pleas or supreme court of the county showed whether such levy had been made, and he forwarded me the original papers in the case in the supreme court. The record upon which the *certiorari* was granted, and upon which the case was disposed of by the supreme court, contains an agreed statement of facts, from which it appears that execution had been issued upon the judgment in favor of the Lebanon Banking Company, and had been levied within the year upon other property than that in dispute, and that this levy was made before the levy of the execution upon the judgment in favor of the Bank of the United States had been levied upon the property in dispute. The court of common pleas ordered the proceeds to be paid to the assignees of the Lebanon Bank, on the supposition that they had the oldest and best lien; and the fourth assignment of error in the case in the supreme court was "because the execution issued on the judgment in favor of the Lebanon Bank, and on which the levy was made on said premises, the proceeds of which are the subject of dispute in this case, was irregular, it appearing that the property levied upon under a prior execution issued on said judgment remained undisposed of at the time of issuing of said execution on which the levy was made upon the premises sold belonging to said defendant Ferguson, and from the sale of which the money in dispute was made;" and the fifth assignment of error was "because the lien of the judgment of the Lebanon Bank on any other property than such as was then levied upon, if it was not absolutely discharged, and rendered void by said attachment, was lost, under the operation of the execution laws of 1822, in having the premises then levied upon offered for sale as the law directed, and the levy

v.6,no.3—18

or appraisement on both of them set aside within six months, or such other time as that law required;" and the sixth assignment of error was "because the execution on the judgment of the Lebanon Bank was not levied on the mortgaged premises which were sold, nor any other of the defendant Ferguson's property, within one year after the rendition of said judgment, according to the provisions of the laws of Ohio at that time in force, and particularly of the statute of February, 1824." From this it appears that the question of there being a levy upon other property was brought directly before the court, and the record, therefore, shows clearly that the question was considered, and it was the fact in the case upon which the decision was based. The supreme court in that case says that they decided the following points:

"*First*, to take a case out of the operation of the seventeenth section, (now 5415,) a levy must have been made on the property in question within a year after the rendition of the judgment. A levy on other property, though within the year, will not save the lien as to the property not levied upon. *Second*, if there are several judgments, and the property in question has not been levied upon within the year under either of them, they stand on an equal footing, and the judgment creditor who first takes out execution and causes a levy to be made will have the preference. *Third*, if execution on an older judgment has not been levied upon a particular piece of property within the year, and an execution upon a junior judgment has been levied upon that property within the year, the junior judgment must have the preference, although a levy may have been made on the same property under the older judgment before the levy was made on the junior judgment. The lien of the junior judgment on all the property not levied upon under the older judgment within the year must continue from one year from its date to the exclusion of the older judgment, provided the junior judgment was rendered before the levy was made on the older judgment. A levy on the older judgment, though after the year, if made before the date of the junior judgment, will have the preference."

And this is in accordance with the decision of this court in the *Bank of U. S.* v. *Longworth*, 1 McLean, 35. In that case Justice McLean says: "Under the act of 1824, in the case of *Shuee* v. *Ferguson*, 3 Ham. (3 Ohio) 136, the supreme court decided that to continue the lien of the judgment upon any particular piece of real estate there must be a levy upon it within the year; that a levy upon property releases all other property not levied upon from the lien of the judgment, and that such property may be taken in execution on a junior judgment." Justice McLean further says: " I confess I entertain some doubts as to the correctness of the decision, which in effect transfers the lien from the judgment to the levy of the execution. If the lien of the judgment be limited to the property levied upon, the judgment, after the levy, has no binding force upon other real property within the county. The policy of the act seems to require diligence by a judgment creditor, and prevents his holding a judgment over the property of the debtor so as to prevent other creditors from reaching it. But it would seem to me that the policy of the act, as well as its letter, would be carried into effect by issuing an execution on a judgment in good faith within the year, and pursuing it with diligence; that the lien of the judgment should not be limited to the property levied on, but should continue to cover all the real property of the defendant within the county until the money was made. The supreme court, however, has decided this question, and as their decision giving a construction to the statute forms the rule of decision in this court, I am disposed to acquiesce in the decision."

The principle of the latter cases applies to this. A levy was made under the judgment in favor of Brown county, within a year from its rendition, upon a part of the lands of the judgment debtor, but not upon the lands in controversy. The judgments in favor of James H. Dunn and R. C. Moore were rendered more than one year after that of Brown county. Under neither of these judgments was a levy made, but before the expiration of the year from their rendition the defendant judgment debtor was adjudicated a bankrupt, and his estate passed into the hands of an assignee; and the

rights of the parties must be determined as of the date of the adjudication of bankruptcy. *Scott* v. *Dunn,* 26 Ohio St. 63. At that date the judgment of Brown county, as to the property in controversy, had lost its lien as against the judgments of Dunn and Moore, more than one year having elapsed since its rendition; but less than one year having elapsed since the rendition of the judgment in favor of James H. Dunn, it had not lost its lien as against the judgment in favor of R. C. Moore, and, there having been no levy under either of the latter judgments, they must be paid in the order of their rendition—first the judgment of James H. Dunn, and second that of R. C. Moore.